UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| R. KOTESWARA RAO KUNDA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:06-CV-187 CEJ ) |
| ST. ANTHONY MEDICAL CENTER PROFESSIONAL LIABILITY AND GENERAL LIABILITY SELF INSURANCE TRUST FUND, et al., | ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Plaintiffs R. Koteswara Rao Kunda and Chicago Insurance Company (CIC) bring this action asserting claims of equitable contribution (Count I) and breach of contract (Count II) against defendants St. Anthony Medical Center Professional Liability and General Liability Self Insurance Trust Fund, St. Anthony's Medical Center, St. Anthony's Physicians Organization, St. Anthony's Medical Center Foundation, and Firstar Bank, N.A. This action arises from a medical malpractice action against Kunda, St. Anthony's Medical Center, and others who are not parties to this action. CIC defended Kunda in the malpractice case and provided funds for a settlement, and plaintiffs now seek contribution and contract damages from defendants. Defendants move for summary judgment, pursuant to Rule 56, Fed. R. Civ. P. Plaintiffs oppose the motion, and the issues are fully briefed.

**I. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

**II. Background**

In 1996, Kunda and St. Anthony's Medical Center ("St. Anthony's") became parties to a Physician Services Agreement ("the Agreement"), which established the parties' rights and duties during Kunda's employment by St. Anthony's. The Agreement provided that St. Anthony's would secure professional liability insurance for Kunda.

In relevant part, the Agreement between Kunda and St. Anthony's (referred to as the Medical Center), signed May 31, 1996, provides as follows:

> (a) The Medical Center hereby agrees to provide medical professional liability coverage, either through a self-coverage program or commercially available insurance, in order to insure Physician against all costs, including defense costs, charged against Physician because of injury to any person arising out of the rendering of or failure to render the services and obligations that are within the scope of Physician's employment duties specified in this Agreement.
>
> If the Medical center procures professional liability coverage which is not on an "occurrence" basis, Physician shall at all times after the expiration or termination of this Agreement for any reason, maintain insurance coverage for any liability directly or indirectly resulting from Physician's provision of medical services, or acts or omissions of Physician, occurring in whole or in part during the term of this Agreement (hereinafter "Continuing Coverage"). Physician may procure such Continuing Coverage by obtaining subsequent insurance policies which have a retroactive date of coverage on or before the Effective Date, by obtaining an extended reporting endorsement applicable to the professional liability insurance coverage maintained by the Medical Center during the term of this Agreement or by such other method reasonably acceptable to the parties.

Physician Services Agreement, Section III.3.1 Professional Liability Coverage.

The Physician Services Agreement also provides:

> 7.4 Entire Agreement. This Agreement represents the entire agreement of the Medical Center and Physician with respect to the subject matter hereof, and supersedes all prior discussions, negotiations and agreements relating to the same subject matter.

Physician Services Agreement Section VII.7.4.[1]

Kunda was employed by St. Anthony's when he provided medical treatment to a patient named Bonna Combs between February 13 and February 15, 2002. Bonna Combs and her husband subsequently brought suit against Kunda, St. Anthony's, and other persons not parties to the instant case, alleging medical malpractice and loss of consortium. Kunda and the Combs ultimately settled the case for $1 million.

At the time of Combs's medical treatment, Kunda received professional liability coverage through a claims-made insurance policy issued by plaintiff CIC, policy number PSP-2005993 ("the policy"). St. Anthony's purchased the policy for Kunda. The limit of the CIC policy was $1 million per claim and $3 million aggregate. Plaintiff CIC retained an attorney for Kunda, funded his

---

[1] The Agreement was supplemented on May 31, 1996, but the supplement does not address professional liability coverage.

defense, and provided the capital for the $1 million settlement in the Combs suit.

At the time the Combs' claim arose, St. Anthony's participated in the St. Anthony's Medical Center Professional Liability and General Liability Self Insurance Trust Fund ("the Trust"), of which Firstar Bank, N.A. was the Trustee. The limit of coverage for a covered person under the Trust in 2002 was $3 million per occurrence and $9 million annual aggregate.

Under the terms of the Trust, only covered losses were to be paid from the Trust fund. The Trust defines covered losses as follows:

> 1. Covered losses include all sums which the Covered Person(s) shall become legally obligated to pay as Damages by reason of liability imposed upon the Covered Person(s) by law or assumed by a Covered Entity by Contract resulting from any act or omission in the following, but only to the extent that such obligations are not otherwise covered by insurance, self-insurance or other fund:
>
> (a) providing professional health care services. . .

Trust, Schedule 1.1(1). Damages includes settlements, legal costs and expenses, and attorney's fees. Trust, Schedule 1.1(2)(a). St. Anthony's is identified as a Covered Entity. Trust, Schedule 1.2(a). "Covered persons" is defined in the Trust to include the following:

> (b) Any employee, officer, director, trustee, corporate member, advisory board member, committee member, hearing officer, religious or leased employee of any Covered Entity, while acting within the course and scope of his or her assigned duties.

Trust, Schedule 1.2. The Trust also provides:

> 4.5. Additional Covered Persons. St. Anthony's is hereby authorized, from time to time and at any time, to endorse additional Covered Persons by written memorandum, which memorandum shall contain the name(s) of such Covered Person(s) and the inclusive dates of coverage. <u>St. Anthony's shall have sole discretion in determining the individuals or entities to be endorsed and the term of coverage.</u>

Trust, Section 4.5.

The Trust provides for an annual actuarial assessment of the amount of St. Anthony's required contribution to the Trust. Each year, an actuary determines the likely claim disbursements for the coming fiscal year, assesses whether the current funds in the Trust are sufficient to cover such disbursements, and calculates the amount of St. Anthony's contribution. During this process, the actuary counts the doctors, surgeons, and other health care providers covered by the Trust to quantify possible exposures to liability.

### III. Discussion

Plaintiffs allege in their complaint that during February 2002, Kunda was entitled to professional liability coverage not only under the CIC policy, but also under the Trust. Plaintiffs assert that the CIC policy provided excess coverage, not primary coverage. They argue that CIC performed a duty that was owed by St. Anthony's when CIC retained and paid an attorney for Kunda's defense. Plaintiffs thus seek $153,210.01 in legal fees from St. Anthony's under the doctrine of equitable contribution.

6

Defendants deny that Kunda was covered under the Trust. They assert that they performed their duty under the Agreement, and move for summary judgment in their favor. Defendants deny that the Agreement contemplates concurrent coverage through the Trust and the CIC policy. Defendants argue that the Agreement gave St. Anthony's the option to provide professional liability coverage for Kunda through either the Trust or a commercially available insurance policy, but not both. Defendants assert that St. Anthony's provided coverage for Kunda through the Trust for a period ending February 1, 2001, after which St. Anthony's purchased the CIC policy and removed Kunda from coverage under the Trust. Defendants assert that the CIC policy provided primary, not excess, coverage, and that CIC is primarily and fully liable for the defense and settlement costs of the Combs suit.

Plaintiffs also claim that St. Anthony's was obligated to provide coverage for "all costs" that Kunda incurred in defending and resolving professional liability claims, and that the purchase of a policy with a $1 million limit was insufficient for this purpose. Defendants argue that the Agreement obligated St. Anthony's to provide insurance that would cover "all costs . . . actually charged." Because the Combs' suit settled for $1 million and CIC funded Kunda's defense, defendants argue that St. Anthony's performed its obligation under the Agreement by providing the CIC policy.

7

## A. Equitable Contribution

The cardinal rule of contract interpretation is to ascertain and give effect to the parties' intention. Langdon v. United Restaurants, Inc., 105 S.W.3d 882, 887 (Mo. Ct. App. 2003) (citations omitted). The parties' intent is to be based on the contract terms, not extrinsic evidence, unless the contract language is ambiguous. Id. "Mere disagreement between the parties does not render contractual terms ambiguous." Id.

In the Physician Services Agreement, St. Anthony's agreed "to provide medical professional liability coverage . . . in order to insure Physician against all costs, including defense costs" for injury to a person resulting from the physician's performance of services within the scope of his employment. The Agreement states that St. Anthony's, in fulfilling its obligation, could provide the professional liability coverage "either" through the Trust "or" through a commercially available insurance policy. The language of the Agreement does not, however, preclude coverage through both if such were necessary to "insure Physician against all costs, including defense costs" arising from personal injury caused by the physician in the course and scope of his employment by St. Anthony's. Defendants have not established that St. Anthony's is not required to make an equitable contribution for Kunda's defense costs. The Court will thus deny defendants summary judgment on Count I for equitable contribution.

### B. Breach of Contract

To establish a breach of contract, plaintiff must show: (1) existence of an enforceable contract between the parties, (2) mutual obligations arising under the terms of the contract, (3) defendant's failure to perform, and (4) plaintiff was damaged by the breach. <u>Rice v. West End Motors, Co.</u>, 905 S.W.2d 541, 542 (Mo. Ct. App. 1995) (citation omitted).

It is undisputed that Kunda was covered under the CIC policy at the time of the events giving rise to the Combs lawsuit. It is undisputed that CIC provided for Kunda's defense and funded the $1 million settlement in that case. The parties disagree, however, whether Kunda was a "covered person" under the Trust at the relevant time.

Defendants argue that the Trust was neither an insurance policy nor a contract between Kunda and St. Anthony's, but rather was an independent agreement between St. Anthony's and the trustee, to administer funds and pay only the claims and expenses that St. Anthony's chose to pay. They claim that Kunda has no right to demand payment of a claim from the Trust because he is not a party to the Trust indenture. Even if he did have a right to demand coverage, defendants assert, they had removed Kunda from coverage under the Trust in February 2001, before the Combs operation. Further, the defendants argue that CIC and Kunda waived the right to any claim against them by failing to timely demand defense and

9

indemnity. Plaintiffs respond that St. Anthony's had actual notice of the Combs suit because it was a named party, but it refused to defend or indemnify Kunda.

Plaintiffs allege that St. Anthony's repeatedly assured Kunda during the Combs lawsuit that he was covered under the Trust, and thus should be estopped from denying such coverage in this action.

It is not disputed that at the time of the Combs operation, Kunda was an employee of St. Anthony's and was acting in the course and scope of his employment. Thus, the Trust on its face appears to afford coverage to Kunda.

In support of their claim that Kunda was removed from coverage under the Trust before the Combs' claim arose, defendants submit the affidavits of Molly Weldon, a former manager of practice management operations at St. Anthony's; Jennifer Biggs, a consultant at Tillinghast/Towers Perrin, which performs regular actuarial analyses of the Trust; and John McGuire, Chief Financial Officer of St. Anthony's. Weldon states that Kunda had been removed from coverage under the Trust at his own request prior to February 1, 2001. Biggs states that Kunda was included in the actuarial analyses of the Trust from July 1, 1998 through June 30, 2001, but not in the analysis of fiscal year 2002 (July 1, 2001 to June 30, 2002). McGuire states that Kunda was removed from coverage under the Trust in early 2001. Defendants also present three annual actuarial analyses of the Trust which purport to show that Kunda was in fact removed from the Trust in 2001.

In response, plaintiffs present evidence that St. Anthony's assured Kunda during the pendency of Combs suit that he was covered by the Trust. Plaintiffs refer to a letter from Michael Cardenas, former general counsel for St. Anthony's, to Kunda dated June 26, 2002, stating:

> This is to confirm that you have professional liability coverage through St. Anthony's Self Insured Trust on an occurrence basis while you were acting within the course and scope of your employment with St. Anthony's Medical Center from July 1, 1996 to June 30, 2002 (at 11:59 p.m.).

Letter from Michael Cardenas, Senior Director Legal/Risk Management, St. Anthony's Medical Center, to Koteswara R. Kunda, M.D., (June 26, 2002). In e-mail dated November 22, 2003, to Kunda's attorney in the Combs suit, Cardenas wrote:

> While employed at St. Anthony's Medical Center, Dr. Kunda, like any other employee, was covered under our self-insured professional liability plan while acting within the course and scope of his employment. It is St. Anthony's position that Dr. Kunda was acting within the course and scope of his employment while treating Bonna Combs . . . during her admission from 2/13/02 through 2/15/02. During the time in question, St. Anthony's Medical Centers self-insurance program was excess to Dr. Kunda's commercial insurance policy with Chicago Insurance Company.

The foregoing evidence establishes that a genuine issue of material fact exists as to whether Kunda was covered by the Trust when he treated Bonna Combs. This factual dispute precludes entry of summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary

judgment [# 31] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 28th day of September, 2007.